IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| DAN H. SHELL, III, M.D., PLLC, | ) |
| | ) |
|     Appellant, | ) |
| | ) |
| v. | )    Case No. 2:22-cv-02363-JTF-tmp |
| | ) |
| CORNELIUS RAY DANDERS and | ) |
| VERONICA DENISE SANDERS, | ) |
| | ) |
|     Appellees. | ) |

**ORDER DENYING APPELLANT'S APPEAL FROM BANKRUPTCY COURT AND AFFIRMING IN PART THE BANKRUPTCY COURT'S ORDER**

Before the Court is Appellant Dan Shell's Appeal from an Order of the United States Bankruptcy Court, filed on June 10, 2022.[1] (ECF No. 1.) The Bankruptcy Court entered the underlying Order Sustaining in Part and Overruling in Part Objections to Claims on April 30, 2022. (ECF No. 1-10.) In the Order, the Bankruptcy Court substantially reduced Shell's claims on the bankruptcy estates of Appellees Cornelius and Veronica Sanders, claims which are based on a Sanctions Order secured in Shelby County Chancery Court on March 17, 2020. (*Id.* at 8.) Shell filed his brief on October 11, 2022. (ECF No. 9.) The Sanderses filed a Response brief on November 28, 2022. (ECF No. 12.) Shell filed a Reply brief on December 12, 2022. (ECF No. 13.) For the following reasons, the Court **AFFIRMS** in part the Order of the Bankruptcy Court.

    I.    <u>FACTUAL AND PROCEDURAL HISTORY</u>

---

[1] For unclear reasons, a duplicated case exists before this Court as well: *Shell v. Sanders, et al*, No. 2:22-cv-02366-JTF-tmp (filed Jun. 10, 2022). This case contains a more extensive record but appeals the same order. (ECF No. 1.) Neither party has filed a brief in the duplicated matter.

The facts underlying the present dispute are undisputed. Appellee Veronica Sanders worked as a nurse for Appellant Dr. Dan Shell, a plastic and reconstructive surgeon, from 2005 to 2010. (ECF No. 9, 3; ECF No. 12, 3.) Sanders left Dr. Shell's employ to open Spa Therapies, LLC, which she co-owned with her husband Cornelius Sanders. (*Id.*) However, the two's professional relationship continued, with Dr. Shell serving as the Medical Director of Spa Therapies pursuant to a Medical Director Agreement. (*Id.*) This agreement provided that Spa Therapies would purchase "certain equipment and inventory from Shell and agree[] to lease office space from Shell located in the same building as Shell's medical practice." (ECF No. 12, 3.) Dr. Shell was also to "receive a fee of twelve percent of Spa Therapies' gross income for 40 months increasing to 15 percent through 2019," which was the end year of the contract. (ECF No. 9, 3.)

The relationship appears to have soured in 2015. In May 2015, Dr. Shell "asked for an accounting from Spa Therapies of its gross revenue," and continued to do so for the next two years despite never receiving the information. (ECF No. 1-10, 5.) In January 2018, Dr. Shell sued Spa Therapies in Shelby County Chancery Court for fees due under the contract. (*Id.*; ECF No. 9, 3.) This lawsuit resulted in a stipulated judgment against Spa Therapies in May 2019 for $380,843.21. (ECF No. 1-10, 6.) Collection efforts began soon after. According to Sanders, "[b]eginning in July of 2019, Shell caused several writs of execution on the assets of Spa Therapies" to be executed, which resulted in "substantially all of the personal property of Spa Therapies to be removed from Spa Therapies." (ECF No. 12, 3.) The third writ "effectively put Spa Therapies out of business," and the business filed a notice of dissolution on October 22, 2019, which was administratively processed on October 6, 2020. (*Id.* at 4.) Spa Therapies ceased operations in October 2019, but the Sanderses and Veronica Sanders' sister formed Ivy Spa and

2

Wellness, PLLC that same month. (*Id.*) The new business initially operated out of the same space but moved once the lease expired. (*Id.* at 5.)

On November 8, 2019, Shell filed a Motion for Rule 37 Sanctions against Spa Therapies in the Chancery Court case, asserting that the company had failed to comply with discovery. (ECF No. 1-10, 7.) "The motion also alleged that income paid to Spa Therapies had been distributed to Mr. and Mrs. Sanders, its owners, to the detriment of its creditors" and asked for $2,200 in sanctions. (*Id.*) The Chancery Court entered an order that directed the parties to mediation in response. (*Id.*) On February 26, 2020, Shell filed a second Motion for Rule 37 Sanctions, once again asserting that Spa Therapies had failed to participate in discovery but adding an allegation that they had failed to participate in the ordered mediation. (*Id.* at 8.) Shell requested $2,000 in attorneys' fees, that the Chancery Court "find that moneys in fact flowed from Spa Therapies to the individuals and that 'a constructive trust should be placed on those monies in that they should have gone to the creditors of the LLC prior to being taken by the Sanders.'" (*Id.*)

The Chancery Court granted the motion in an Order ("the Sanctions Order") filed on March 17, 2020. Given the brevity of the Sanctions Order and its centrality to the present appeal, it is reproduced in full here:

> By Motion Made and facts presented to this Court, and it appearing that the Plaintiff's Motion for Rule 37 Sanctions, and to Amend Prior Order is well taken, and this Court finding that,
>
> 1. The Defendants did not comply with the Courts [sic] Order for mediation, and have failed to produce the documents identified in the prior Consent Order,
>
> 2. That the dissolution of Spa Therapies, LLC without the statutorily required distributed of the assets of the LLC, to the Creditors of the LLC has necessitated a $380,843.21 judgment against Cornelius Sanders and Veronica Sanders, individually under a Constructive Trust imposed by the Court for failing to dissolve Spa Therapies, LLC as required by statute in fraud of creditors.
>
> Wherefore, it is ordered that a Constructive Trust is imposed against Cornelius Sanders and Veronica Sanders, individually, for the judgment amount of

3

>    $380,843.21 for monies owed and adjudged against Spa Therapies, LLC, and a sanction of $2,000.00 is awarded to Plaintiff in attorney's fees against Cornelius and Veronica Sanders individually. For a total judgment against Cornelius and Veronica Sanders of $382,843.21 individually, with all cost [sic] assessed against Defendant's [sic] for which let execution lie.

(ECF No. 1-10, 8.) The Order was signed by Judge JoeDae L. Jenkins but noted that it had been prepared by Shell's attorney. (*Id.* at 9.) The Sanderses did not appeal the Sanctions Order. However, Veronica Sanders has stated under oath that she "was not present when the motion for sanctions was heard and had not previously been provided with information about the motions for sanctions by Mr. William G. Hardwick, II, the attorney for Spa Therapies and Mr. and Mrs. Sanders at that time." (*Id.* at 9.) Sanders has also stated that Hardwick was not authorized to stipulate to the $380,843.21 judgment against Spa Therapies and has since sued him, with Cornelius Sanders and Spa Therapies as co-plaintiffs, for legal malpractice. (*Id.*)

Cornelius Sanders filed for Chapter 13 bankruptcy on January 7, 2021. (ECF No. 1-10, 2.) Veronica Sanders filed a separate Chapter 13 case on July 13, 2021. (*Id.*) The cases are administered jointly. Shell filed a Proof of Claim (No. 16-1) in Cornelius Sanders' case on March 10, 2021, for $409,475.45. (*Id.*) This amount was based on the Sanctions Order's alleged imposition of a $380,843.21 judgment against Cornelius Sanders and the post-judgment interest thereon. (*Id.*) Shell later amended this claim downward to a total of $405,971.19 in Claim No. 16-2. (*Id.* at 3.) Shell also filed a Proof of Claim (No. 12-1) in Veronica Sanders's case on September 20, 2021, for $420,683.48, again based on the Sanctions Order alleged judgment and its post-judgment interest. (*Id.*)

Both the Sanderses filed objections to the Proofs of Claim in October 2021. (ECF No. 1-10, 3.) The thrust of the objections was that the Sanderses were not indebted to Dan Shell individually, and that even after the Sanctions Order the stipulated judgment was the sole responsibility of Spa Therapies. The Bankruptcy Court held a trial on these objections on April

4

27, 2022. (*Id.* at 1.) The main questions at trial were the effect of the Sanctions Order and whether the Sanderses possessed any assets that were wrongly transferred to them from Spa Therapies. The Bankruptcy Court noted that "Dr. Shell was not able to identify any assets that he alleges were transferred from Spa Therapies to Mr. or Mrs. Sanders between October 22, 2019 (the date the voluntary dissolution of Spa Therapies was initiated) and March 1, 2020 (the month in which the Sanctions Order was entered)." (*Id.* at 9.) Shell identified the malpractice suit against Hardwick and Ivy Spa and Wellness's client list assets of Spa Therapies. (*Id.*) The Bankruptcy Court then entered an Order which held that "the Sanctions Order must be read to create a constructive trust but not a money judgment against the individual Debtors," ultimately finding them responsible for only $2,000 in attorneys' fees due to the lack of proof regarding Spa Therapies' assets and reducing Shell's claim accordingly. (ECF No. 1-10, 11.) It is this order that Shell now appeals.

## II.     LEGAL STANDARD

A District Court reviews an appealed Bankruptcy Court's order under two standards. First, a Bankruptcy Court's findings of fact are reviewed for clear error. *In re Rembert*, 141 F.3d 277, 280 (6th Cir. 1998). "Factual findings are clearly erroneous only when the reviewing court 'is left with the definite and firm conviction that a mistake has been committed,'" even if there is some evidence to support it. *In re Perkins*, 581 B.R. 822, 827 (6th Cir. BAP 2018) (quoting *United States v. Ray*, 803 F.3d 244, 265 (6th Cir. 2015)). "When there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)). Second, a Bankruptcy Court's conclusions of law are reviewed de novo. *In re Global Technovations Inc.*, 694 F.3d 705, 714 (6th Cir. 2012) (citing *In re*

5

*Isaacman*, 26 F.3d 629, 631 (6th Cir. 1994)). In the present case, the Court does not understand Shell to be challenging any of the Bankruptcy Court's Findings of Fact.

### III.   LEGAL ANALYSIS

Shell takes issue with many parts of the Bankruptcy Court's Order. First, he argues that the Bankruptcy Court improperly reviewed the Sanctions Order, which operated as a state court judgment that should not have been disturbed. Second, he argues that the Bankruptcy Court found ambiguity where there is none, and incorrectly held that the Sanctions Order did not create a money judgment against the Sanders. Part and parcel with this, he argues that the Chancery Court was well within its power under Tennessee Rule of Civil Procedure 37 to impose such a judgment. Third, he argues that the malpractice lawsuit filed by the Sanderses and Spa Therapies is in fact subject to the constructive trust created by the Sanctions Order.

1. <u>Review of the Sanctions Order</u>

Shell argues that the Bankruptcy Court improperly "undertook an extensive review of the Sanctions Order, questioned the procedure in the Chancery Court, and concluded that the order was not supported by Tennessee law." (ECF No. 9, 11-12.) He notes the general principle that "Bankruptcy courts, as federal courts, do not sit as an appellate court in review of state court decisions" and that federal courts may not disregard a state court judgment, even where erroneous, until properly reversed. (*Id.* at 10) (citing *In re McKeehan*, No. 96-29658-K, Chapter 7, Adv. Proc. No. 96-1251, 1999 Bankr. LEXIS 2087 (Bankr. W.D. Tenn. Jun. 8, 1999)). For their part, the Sanderses agree with the Bankruptcy Court that the Order is ambiguous.

The Court does not agree with Shell that the Bankruptcy Court was required to accept the Sanctions Order at face value according to Shell's own interpretation. As the Bankruptcy Court noted, "[i]n a bankruptcy case, a proof of claim is allowed as filed *unless a party in interest*

6

*objects.*" (ECF No. 1-10, 10) (citing 11 U.S.C. § 502(a)) (emphasis added). The Sanderses objected. When an objection is had, the Bankruptcy Court must "determine the amount of such claim in lawful currency of the United States as of the date of the filing of the position," which includes determining the extent that the claim is unenforceable against the debtor or property of the debtor under any agreement or applicable law. 11 U.S.C. § 502(b). By examining and reviewing the order, the Bankruptcy Court was following the statutory mandate to determine the exact amount of the claim Shell had filed, including the extent it was unenforceable under law. Shell's claim was based on a state court order. Rather than improperly reviewing a state court judgment, the Bankruptcy Court was engaging in its duty to determine the effect such a judgment had. While doing so, the Bankruptcy Court encountered what it viewed as ambiguity and sought to resolve it. Shell disagrees with their conclusions, which are addressed below, but the Bankruptcy Court was well within its power to examine the Sanctions Order, as it served as a Proof of Claim, and find it ambiguous. Case law from other district courts confirms this view as well, which even Shell admits.[2] *See In re Bush*, 579 B.R. 688, 697 (N.D. N.Y. 2017) ("As previously noted, this court will not presume to sit in appellate review of a state court order. However, this court must apply and interpret that judgment.")

Shell also takes issue with the Bankruptcy Court's discussion of the alleged deficiency in process that the Sanderses received in Chancery Court, which did not involve "ambiguity" or

---

[2] Shell cites to two cases in support of the idea that Sixth Circuit district courts are more restrictive. Neither is applicable. In *In re McKeehan*, the plaintiff directly asked the Bankruptcy Court to reconsider the merits of an underlying award of $10,000 of attorneys' fees, in addition to whether those fees were classified as "support" under a state child support statute. 1999 Bankr. LEXIS 2087, at *12-13 (Bankr. W.D. Tenn. Jun. 8, 1999). Notably, the Court answered the later question (thus interpreting whether the $10,000 could indeed be drawn from the estate) but declined to reconsider the award itself. Thus, the *McKeehan* court did not just blindly enforce a state court judgment without first examining how it interacted with bankruptcy law. In *In re May*, the District Court dealt with the application of the doctrine of *res judicata* to a default judgment, finding that the mere fact a judgment was default was not an adequate defense to applying *res judicata* to an amount of damages, which meant those damages had to be taken at face value when deciding a claim. 321 B.R. 462, 465-67 (N.D. Ohio 2004). Here, the Sanderses do not rely on a default judgment and the doctrine of *res judicata* is not implicated.

7

interpreting the Order. However, a review of the relevant sections suggests such discussion was merely dicta. The Bankruptcy Court's Order rests on its interpretation of the Sanctions Order and Tennessee Rule of Civil Procedure 37, not process concerns for Sanders. To the extent the process (or lack thereof) featured into the Bankruptcy Court's interpretation, it was as evidence of a particular interpretation rather than an independent reason. For example, the Bankruptcy Court noted that the Sanders were not even defendants in the Chancery Court case before suddenly appearing on the Sanctions Order's caption as evidence of the constructive trust. (ECF No. 1-10, 12.) Indeed, in a section regarding the $2,000 in attorneys' fees assessed against the Sanders, the Bankruptcy Court stated that "[w]hile the Court remains concerned about the lack of process that brought the individuals before the Chancellor, the Debtors have not contested this part of the Sanctions Order." (ECF No. 1-10, 14.) If due process concerns were the driving force behind the decision as Shell alleges, it is unlikely such a result would stand.

2.  *The Effect of the Sanctions Order*

As the Bankruptcy Court's interpretation of the Sanctions Order is a legal conclusion, the Court reviews that conclusion *de novo*. *In re Global Technovations Inc.*, 694 F.3d at 714. Federal Courts have well-settled principles that guide the interpretation of consent degrees or stipulated judgments, but principles guiding the interpretation of a court order, which do not feature an element of contractual agreement, are less developed. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 371-72 (6th Cir. 1998). However, in the absence of controlling federal law on an issue, state law can help fill in the gaps, especially in interpreting a state court order. *Evoqua Water Technologies, LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 229 (6th Cir. 2019) (using Michigan contract interpretation principles where no federal ones existed, even when reviewing a federal court consent decree). Here, the Sanctions Order was issued by a

8

Tennessee Chancery Court, and thus the Court will utilize Tennessee state law principles when interpreting it. "When interpreting a trial court's order, we ascertain the intent of the court, and, if possible, make the order in harmony with the entire record in the case and to be such as ought to have been rendered." *In re Estate of Thompson*, 636 S.W.3d 1, 20 (Tenn. Ct. App. 2021) (quoting *Stephens v. Home Depot U.SA., Inc.*, 529 S.W.3d 63, 73 (Tenn. Ct. App. 2016) (internal quotation marks omitted)). It is unclear from the Bankruptcy Court's Order what, if any, interpretive principles were used in interpreting the Sanctions Order. But this Court interprets the underlying Sanctions Order *de novo*, not the Bankruptcy Court's Order itself.

Shell argues that the Bankruptcy Court's Order got it wrong. He states that the Sanctions Order found that "income of Spa Therapies . . . had improperly flowed to the Debtors," and that "the Sanctions Order imposed both a constructive trust against the Debtors, individually, to recover the assets that improperly flowed to them instead of Spa Therapies creditors and a total judgment against the Debtors, individually, in the amount of $382,843.21." (ECF No. 9, 12.) Thus, he states that any ambiguity is fabricated, and regardless, should not be resolved as if the Sanctions Order is a "contract between Dr. Shell and the Debtors." (*Id.* at 13.)

The Court cannot agree with Shell's interpretation, as it is internally inconsistent and relies on a strained interpretation of the Sanctions Order. The Sanctions Order stated:

> Wherefore, it is ordered that a Constructive Trust is imposed against Cornelius Sanders and Veronica Sanders, individually, for the judgment amount of $380,843.21 for monies owed and adjudged against Spa Therapies, LLC, and a sanction of $2,000.00 is awarded to Plaintiff in attorney's fees against Cornelius and Veronica Sanders individually. For a total judgment against Cornelius and Veronica Sanders of $382,843.21 individually, with all cost [sic] assessed against Defendant's [sic] for which let execution lie.

(ECF No. 1-10, 8.) The Court agrees with the Bankruptcy Court that this language is ambiguous in multiple ways. First, the judgment speaks of a "Constructive Trust" imposed individually. However, "a constructive trust is an *in rem* remedy." *In re Abbey Financial Corp.*, 193 B.R. 89,

9

94 (D. Mass. 1996). *In rem* remedies or judgments are "limited to the property that supports jurisdiction and do[] not impose a personal liability on the property owner, since he is not before the court." *In re Lakeview Development Corp.*, 614 B.R. 603, 611 (D. Colo. 2020) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 199 (1997)). Imposing a constructive trust "individually" is problematic. An individual owner of the property under an *in rem* remedy "is affected only 'indirectly by an in rem judgment adverse to his interest in the property subject to the court's disposition.'" *Id.* Clearly, an *in rem* remedy said to be imposed individually introduces ambiguity into what the Sanctions Order intends.

Second, the phrasing of the constructive trust is confusing and mixes several concepts. The Sanctions Order states that circumstances have "necessitated a $380,843.21 judgment individually under a Constructive Trust imposed by the Court for failing to dissolve Spa Therapies, LLC as required by statue in fraud of creditors," before noting that merely a "Constructive Trust is imposed" against the Sanderses. Confusion arises not just because of the imposition of a constructive trust upon an individual, but because a constructive trust is an equitable remedy while a money judgment is a legal remedy, as the Bankruptcy Court noted. (ECF No. 1-10, 12.) Typically, equitable remedies are only granted where legal remedies are inadequate or inapposite. *See Shahan v. Franklin Cnty.*, No. M2002-00725-COA-R3-CV, 2003 WL 23093836, at *8 (Tenn. Ct. App. Dec. 30, 2003) (noting that legal remedies are preferred in contract actions). Further, the two types have different aims: "A court awards equitable restitution when it imposes a constructive trust or lien on 'particular funds or property in the defendant's possession' but legal restitution when it holds the defendant liable for a sum of money." *Central States, Southeast and Southwest Areas Health and Welfare Fund v. First Agency, Inc.*, 756 F.3d 954, 960 (6th Cir. 2014) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204,

210 (2002)). The mixing of the two concepts introduces ambiguity into what the Chancery Court intended to accomplish.

Third and relatedly, *in rem* remedies must be aimed at specific property. In Tennessee, "[a] constructive trust may only be imposed against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment or questionable means, has obtained *an interest in property* which he ought not in equity or in good conscience retain." *Story v. Lanier*, 166 S.W.3d 167, 185 (Tenn. Ct. App. 2004). Put another way, "[u]nder Tennessee law, in order for a constructive trust to be created, there must be proof of a wrongful act, *specific* property acquired by a wrongdoer, which is traceable to wrongful behavior, and an equitable reason why the party holding the property should not be allowed to keep it."³ *In re Hicks*, 176 B.R. 466, 471 (W.D. Tenn. 1995) (citing *In re Mark Benskin & Co., Inc.*, 161 B.R. 644, 654 (W.D. Tenn.1993)) (emphasis added). The Sanctions Order identifies no specific property that the Sanders hold in "constructive trust" for Shell from Spa Therapies, requiring the Court to determine, what, if anything, the constructive trust is imposed on. The Bankruptcy Court answered this question by finding that the Sanctions Order sought to impose a constructive trust "upon any assets of Spa Therapies in the hands of the Debtors." (ECF No. 1-10, 14.) The Court agrees that this is the most sensible interpretation of the Sanctions Order, especially as the best way to "make the order in harmony with the entire record in the case and to be such as ought to have been rendered." *In re Estate of Thompson*, 636 S.W.3d at 20. The Court will review that record now.

---

³ The reason specific property must be identified is that constructive trusts are equitable remedies that create a "legal fiction." *In re Omegas Group, Inc.*, 16 F.3d 1443, 1449 (6th Cir. 1994). In imposing a constructive trust, the Court pretends that "the fraudulent acquirer" of the property at issue "obtains mere title or a possessory interest and is said to hold identifiable property in trust for its beneficiary or rightful owner." *In re Mark Benskin & Co, Inc.*, 161 B.R. at 654. "Such a trust is 'constructed' by a court of equity 'to satisfy the demands of justice' and prevent unjust enrichment." *Id.* (quoting *In re Anderson*, 30 B.R. 955, 1014 (M.D. Tenn. 1983)).

11

The Sanctions Order states that a "Constructive Trust" is imposed for the judgment amount of $380,843.21, and states that judgment is "for monies owed and adjudged against Spa Therapies." (*Id.* at 8.) In the same action, the parties had already entered into a stipulated judgment for $380,843.21, reflecting the amount of Shell's Medical Director fees that the Sanders had withheld. The first Motion for Rule 37 Sanctions Shell filed sought to establish certain facts as true for purposes of the case as a sanction under Tennessee Rule of Civil Procedure 37 for failing to participate in discovery.[4] One of the facts Shell sought to establish was that "income paid in to Spa Therapies, LLC, has flowed from Spa Therapies, LLC to Veronica Sanders and Cornelius Sanders, the owners of the business." (ECF No. 1-10, 11.) When the second Motion for Rule 37 Sanctions (which led to the entry of the Sanctions Order) was filed Shell again requested that the Motion "should be adjudicated as proving that the income to Spa Therapies, LLC has flowed to them individually and that a constructive trust should be placed on those monies in that they should have gone to the creditors of the LLC prior to being taken by Sanders." (*Id.* at 12.) The Sanctions Order did establish a modified version of this fact as true: it found that the constructive trust was required to retrieve "those monies" because the Sanders had "fail[ed] to dissolve Spa Therapies, LLC as required by statute in fraud of creditors." (ECF No. 1-10, 8.) Put another way, the Sanctions Order established, for purposes of the case, that the Sanderses had fraudulently taken money that was owed to Spa Therapies' creditors, including Shell's $380,843.21 in unpaid Medical Director fees, out of Spa Therapies upon its dissolution. The Sanctions Order thus created a constructive trust *on those monies*. The Sanctions Order then added an additional $2,000 in attorney's fees to that amount for a "total judgment" of $382,843.21. (*Id.*) Shell's interpretation

---

[4] Tennessee Rule of Civil Procedure 37 allows for "an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order[.]" Tenn. R. Civ. P. 37.02(A).

12

that the Sanctions Order imposed both a constructive trust on the $380,843.21 presumed taken from Spa Therapies and *an additional* $380,843.21 judgment on the Debtors individually is unsupported by the text of the Sanctions Order. If this were so, a constructive trust would not be required: the Sanderses would simply be liable for the judgment. Interpreting the Sanctions Order's ambiguity in light of the entire record, it is most reasonably read as creating a "Constructive Trust" on the $380,843.21 that is now presumed, as a Sanction for purposes of the Chancery Court action, to have been fraudulently taken from Spa Therapies by the Debtors upon its dissolution.

The Court notes that Shell agrees with this understanding, in the alternative, at certain points in his brief. *See* (ECF No. 9, 14.)[5] However, he mostly argues that a generic judgment of $382,843.21 was imposed on the Sanderses individually, unmoored from the requirement that the specific assets be identified pursuant to the constructive trust. *See* (*Id.* at 12.)[6] The Court agrees with the former and not the later, and believes that the Bankruptcy Court does as well. Much of the confusion stems from the interaction of the Sanctions Order with the rules and procedures of Bankruptcy Court. The Bankruptcy Court found that the Sanctions Order "must be read solely as an attempt to create a constructive trust upon any assets of Spa Therapies in the hands of the Debtors." (ECF No. 1-10, 14.) For reasons that will be made clear in the following section, this is an identical understanding to the Court's for practical purposes.

3. *<u>Effect of the Sanctions Order in Bankruptcy Court</u>*

---

[5] "Therefore, even if the Bankruptcy Court were correct that the Sanctions Order did not award a money judgment against the Debtors individually, the Sanctions Order unambiguously imposes a constructive trust against the Debtors individually for the income improperly directed from Spa Therapies in the amount of $380,843.21."

[6] "Second, the Sanctions Order imposed both a constructive trust against the Debtors, individually, to recover the assets that improperly flowed to them instead of Spa Therapies creditors and a total judgment against the Debtors, individually, in the amount of $382,843.21."

Explaining the effect of the Sanctions Order requires establishing two preliminary principles. First, it is undisputed that the Sanctions Order bases its creation of a constructive trust on a presumed fact, as stated above. The Sanctions Order presumed that the Sanderses had improperly taken $380,343.21 of Spa Therapies assets upon dissolution at that these monies were owed to Shell. Presuming this fact explains the wording of the Sanctions Order: it created a constructive trust (an *in rem* remedy as to specific property) to recover that specific money. Establishing this fact was within the power of the Chancery Court, as Tennessee Rule of Civil Procedure 37(A) provides that a court may enter "an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order[.]" This does not mean such a fact is literally true, but instead that it will be taken as true throughout the proceedings. Such a presumption is limited to "the purposes of *the* action," not all actions, and not outside of proceedings before the court. The Bankruptcy Court, then, need not presume this fact.

Second, the Sanctions Order entitles Shell to $380,843.21 of Spa Therapies assets or cash that the Sanderses improperly obtained from Spa Therapies upon its dissolution. It does not entitle him to $380,843.21 of the Sanderses' generic assets. Even where it speaks of an individual judgment, that judgment is subject to the constructive trust for assets that could have paid the stipulated judgment against Spa Therapies. This ambiguity was addressed and resolved above. The Bankruptcy Court, while wording its interpretation differently, reached functionally the same result: "the Sanctions Order must be read solely as an attempt to create a constructive trust upon any assets of Spa Therapies in the hands of the Debtors." (ECF No. 1-10, 14.) The Court believes that such assets are limited by the terms of the Sanctions Order to the $380,843.21 stipulated judgment amount, but otherwise agrees with the Bankruptcy Court's Order.

When taken together, these findings compel the result reached by the Bankruptcy Court: Shell must identify assets of Spa Therapies that he believes the Sanderses improperly obtained upon the company's dissolution in order for the constructive trust to operate. However, without the factual presumption that the Chancery Court relied on, he could identify few if any assets. The Bankruptcy Court, and this Court, need not presume that the property was taken. Instead, the Bankruptcy Court, and Shell PLLC, had access to "the bankruptcy schedules and three years of tax returns for the individual Debtors," but were only able to identify "two potential assets that could be subject to the constructive trust imposed by the Sanctions Order." (ECF No. 1-10, 15.) It appears that the presumed fact the Sanctions Order relied upon is not born out in the record before the Bankruptcy Court. This did not relieve Shell of his duty to identify the property the Sanderses took in order for the constructive trust to operate, since "[u]nder both state law and federal bankruptcy law, the equitable interest in property acquired by fraud may remain property of its rightful owner *only to the extent that it is identifiable*." *In re Mark Benskin & Co., Inc.*, 161 B.R. at 654 (citing *In re Quality Holstein Leasing*, 752 F.2d 1009, 1012 (5th Cir. 1985); *In re Anderson*, 30 B.R. at 995; *Covert v. Nashville, C & St. L. Ry.*, 186 Tenn. 142 (1948)) (emphasis added).

Thus, Shell still had a duty to identify the property that was subject to the constructive trust, regardless of the form it took, before being entitled to collect under the terms of the Sanctions Order (except for the $2,000 in attorney's fees that the Sanders did not contest). At trial before the Bankruptcy Court, he identified two potential assets. The Bankruptcy Court rejected those claims, but the Court will consider them now.

4. *Assets Subject to the Trust*

15

At trial, Shell identified two potential assets that would be subject to the constructive trust. First was the patient list of the Sanderses' new company, Ivy Spa and Wellness. Second was the malpractice claim that the Sanderses and Spa Therapies have jointly filed against their former attorney. The Bankruptcy Court found that neither could be subject to the constructive trust. Shell did not appeal the finding regarding the patient list and thus the Court accepts the finding as uncontested.

Regarding the malpractice claim, the Bankruptcy Court noted that the claim "was brought in the names of Spa Therapies *and* the individual Debtors in May 2020, several months after Mr. Sanders initiated the dissolution of Spa Therapies." (ECF No. 1-10, 15.) Because of this, the Bankruptcy Court found that the suit could not have been "'distributed' to the individual Debtors in connection with the dissolution of Spa Therapies" and declared it not subject to the constructive trust. (*Id.*) On appeal, Shell argues that this was not a sufficient reason to find that the suit was not subject to the constructive trust. (ECF No. 9, 17) ("Because both the Debtors and Spa Therapies are named plaintiffs in the malpractice lawsuit arising from the original judgment imposed against Spa Therapies and the Bankruptcy Court did not explain why the malpractice lawsuit would not be part of the constructive trust, the Bankruptcy Court's holding as to this issue should be reversed.")

The Bankruptcy Court's reasoning was sound. The constructive trust was placed on property that was presumed for purposes of the action to have been improperly transferred from Spa Therapies to the Sanderses upon dissolution. Spa Therapies filed its notice of dissolution on October 21, 2019, and the malpractice suit was filed in May 2020. (ECF No. 1-10. 15.) While it follows that Spa Therapies interest in the suit may be collectable by Shell under the terms of the original stipulated judgment, the Sanderses' interests in the suit are separate and were not

16

improperly transferred to them by Spa Therapies upon the company's dissolution. They could not have been, as the lawsuit arose almost a year after the company dissolved. There is also no evidence that Spa Therapies' interest was subsequently transferred to the Sanderses either. Thus, their interests in the malpractice suit are not subject to the terms of the constructive trust.

## IV.     CONCLUSION

Accordingly, the Court **AFFIRMS** the Bankruptcy Court's Order in Part. The Bankruptcy Court was within its statutory duties when examining the Sanctions Order for ambiguity. Further, the Sanctions Order contained ambiguity that is best resolved, under principles of interpretation from Tennessee law, by finding that the Sanctions Order created a constructive trust on up to $380,843.21 in assets that were improperly transferred from Spa Therapies to the Sanderses upon dissolution of the LLC. Nothing in the order relieved Shell of his obligation to specifically identify the property and assets subject to that constructive trust in Bankruptcy Court. Specific property was not identified as required in the first instance but was only presumed for purposes of that action. The malpractice suit is not subject to the constructive trust, as there is no evidence that Spa Therapies' interest in the suit was transferred to the Sanders' upon dissolution. Thus, the full effect of the Sanctions Order is to grant Shell a claim of $2,000 in attorney's fees against the Sanderses' bankruptcy estate, a ruling they did not contest.

**IT IS SO ORDERED** on this the 4th day of April 2023.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE